UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANNA-MARIE THOMAS, Ed.D.,

                    Plaintiff,                      **MEMORANDUM AND ORDER**

        -against-                      10-CV-464 (SLT)

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, f/k/a BOARD OF EDUCATION
OF THE CITY SCHOOL DISTRICT OF
NEW YORK, *et al.*,

                    Defendants.
-------------------------------------------------------------x

**TOWNES, United States District Judge:**

       Plaintiff Anna-Marie Thomas ("Plaintiff"), a teacher employed by defendant New York

City Department of Education (the "DOE"), brings this action against the DOE; its former

Chancellor, Joel I. Klein; and four individuals who, at certain times relevant to this action,

worked with Plaintiff at the Brooklyn High School of the Arts (collectively, the "BHSA

Defendants").  Plaintiff's complaint (the "Complaint") principally alleges employment

discrimination, advancing causes of action under the Age Discrimination in Employment Act, 29

U.S.C. § 621 *et seq*. (the "ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12112(a)

(the "ADA"); the New York State Human Rights Law, N.Y. Exec. L. § 296 (the "NYSHRL");

and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq*. (the

"NYCHRL"), and alluding to – but not specifically alleging – violations of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  However, the Complaint also includes a claim

pursuant to 42 U.S.C. § 1983, alleging violations of the Due Process and Equal Protection

Clause of the Fourteenth Amendment, and state-law claims for negligent and intentional

infliction of emotional distress.

Defendants – all six of whom are represented by the Corporation Counsel of the City of New York – now move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that certain of Plaintiff's employment discrimination claims are time-barred, that most of Plaintiff's six causes of action fail to state a claim, and that Plaintiff's claims under the NYSHRL and NYCHRL must be dismissed because the Complaint does not allege that Plaintiff filed a notice of claim as required by section 3813 of the New York Education Law. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Unless otherwise indicated, the following facts are drawn from the Complaint and are assumed to be true for purposes of this motion to dismiss.

Plaintiff was 64 years old and had been employed by defendant DOE for 35 years at the time this action was commenced (Complaint at ¶¶11, 18). Plaintiff began her career with the DOE in 1973, and became "permanently certified" and unconditionally tenured in 1978 (*id*. at ¶¶22-23). At all times relevant to this action, Plaintiff held New York State and City licenses to teach physical education (including health) and to work as a Secondary School Guidance Counselor (*id*. at ¶¶20-21).

In 2002, after working for many years at Boys and Girls High School in Brooklyn, Plaintiff was "recruited" to work at the newly established Brooklyn High School of the Arts ("BHSA") (*id*. at ¶¶24-25).[1] At that time, Plaintiff wanted to work as a guidance counselor – a

---

[1]Although the caption of the Complaint refers to this school as the Brooklyn High School of the Arts, paragraph 14 of the Complaint refers to it as the Brooklyn High School for the Arts. This Court takes judicial notice that the school is currently named the Brooklyn High School of the Arts. *See* http://www.brooklynartshs.org/home.

job that paid $3,000 more annually than did her job as a physical education teacher (*id*. at ¶32). However, because BHSA had only ninth- and tenth-grade students when it opened in September 2002, BHSA did not yet need guidance counselors (*id*.). Accordingly, Plaintiff agreed to work at BHSA on the condition that she "would be appointed as a guidance counselor as the need arose" (*id*.).

In each of the next three academic years, BHSA hired one new guidance counselor. In both of the first two years, Plaintiff was "passed over for the Guidance Counselor position" in favor of women in their mid-thirties (*id*. at ¶¶30-31). In September 2005, defendant Robert Finley – then the principal of BHSA – appointed Drew Martir, a teacher whom Plaintiff believed to be in his mid-twenties, even though Martir was not certified to work as a guidance counselor (*id*. at ¶44). According to Plaintiff, Martir nonetheless "did the same work as a guidance counselor," even though he could not receive the $3,000 annual pay differential (*id*.).

In October 2006, Plaintiff, who had been teaching health to ninth-graders since 2003, was assigned to replace Dr. Catherine Cabeza, a physical education teacher who had been granted an "extended Health Restoration Leave" (*id*. at ¶¶46-47). This new assignment involved "team-teaching" in that Plaintiff taught the girls while defendant Daniel Paradis, a 30-year-old Spanish teacher who was then working toward a physical education teaching license, taught the boys (*id*. at ¶¶48-49, 70). Plaintiff "sensitively attempted to mentor" Paradis by, *inter alia*, "politely and cautiously" suggesting to Paradis that "many of his practices created hazards" to the students' safety (*id*. at ¶¶51, 53). Paradis apparently did not welcome this mentoring, but became "more and more reactive and agitated when Plaintiff interacted with him" (*id*. at ¶53).

Tensions also developed when Plaintiff discontinued a practice, developed prior to Dr. Cabeza's departure, of having two girls attend the boys' class for purposes of taking attendance (*id*. at ¶¶54-55).  Believing that the girls' "regular non-attendance at class and . . . performance of a teacher-only duty of making entries on the official attendance records were both highly impermissible," Plaintiff entered Paradis's class to retrieve the two girls (*id*. at ¶56).  When she did so, "Paradis became highly irate and made various utterances to indicate that he believed that plaintiff was overreaching her authority . . ." (*id*. at ¶57).  At some point thereafter, while speaking to Plaintiff, Paradis "threw up to Plaintiff that she was the highest paid teacher in the school" (*id*. at ¶58).  According to Plaintiff, that information "could only have been shared with . . . Paradis by school administration" (*id*. at ¶60).

Tensions escalated on December 4, 2006, when Plaintiff retrieved gym equipment from "a common-use room to which all Phys. Ed. Faculty had access" (*id*. at ¶¶61-62).  At around 1:30 p.m., Paradis approached Plaintiff in a corridor near the students' locker room, calling her "crazy" and otherwise shouting at her for having taken the equipment from "his office" (*id*. at ¶63).  Although Paradis did not actually strike her, Plaintiff alleges that his "menacing tirade would have resulted in aggravated assault" had a third-party not stepped between them (*id*. at ¶65).

Plaintiff promptly reported the incident to Finley and defendant John Reedy, an Assistant Principal, telling them that she no longer felt safe team-teaching with Paradis and would not conduct her classes in his presence (*id*. at ¶¶69-70).  Although Plaintiff specifically requested that they "admonish . . . Paradis for his inappropriate conduct unbecoming a professional," Finley and Reedy took no action whatsoever (*id*. at ¶¶71-72).  Indeed, Plaintiff alleges that

Finley "encouraged . . . students to whisper behind her back as they went around and signed a petition to have her fired." *Id.* at ¶174.

Finley's inaction "emboldened" Paradis, and Plaintiff "experienced an all-encompassing pervasive hostile work environment that she found intolerable" (*id.* at ¶78). According to Plaintiff, "[t]he acquiescence that BHSA administration displayed . . . made Plaintiff suspect that there came a time when . . . Paradis was being encouraged to create the hostile work environment so as to harass Plaintiff" (*id.* at ¶74).

### Plaintiff's Reassignment to a Teacher Reassignment Center

On November 16, 2007, Finley, in the presence of Reedy, handed Plaintiff a letter informing her that she was being "reassigned, effective immediately, pending investigation" into an allegation made against her (*id.* at ¶¶85-88). Although Finley initially claimed to have "no idea" as to what prompted the reassignment, Plaintiff subsequently learned that Finley himself had requested a psychiatric examination of Plaintiff (*id.* at ¶¶90, 103-04).

On November 19, 2007, Plaintiff was assigned to a Teacher Reassignment Center ("TRC"), colloquially referred to as a "rubber room" (*id.* at ¶¶95-98). On January 3, 2008, Plaintiff was evaluated by a DOE staff psychiatrist, who "shar[ed]" Finley's request with Plaintiff (*id.* at ¶¶103-04).[2] Appended to Finley's request were statements from six students who asserted that Plaintiff had made inappropriate comments in class on November 1, 2007 (*id.* at ¶¶104-05). Plaintiff, who denies making the inappropriate comments, alleges that two of the statements were made by students who were not enrolled in any of Plaintiff's class, and that the

---

[2]Although paragraph 103 states that the psychiatric examination took place on January 3, 2006, the allegations in paragraph 112 clarify that the examination actually took place on January 3, 2008.

other four statements were made by students who had just received failing grades from Plaintiff on their report cards (*id*. at ¶¶105-06).

Although the psychiatrist found Plaintiff "fit for duty," Plaintiff remained in the TRC and did not even "become aware of the charges against her" until June 18, 2008 (*id*. at ¶¶99, 110). An arbitrator was not appointed to Plaintiff's case until October 21, 2008, and a pre-hearing conference was not held until November 14, 2008 (*id*. at ¶¶153, 157). The hearing itself began on February 10, 2009, but did not conclude until June 24, 2009 (*id*. at ¶¶164-65). During that hearing, Finley produced transcripts to show that the four students whom Plaintiff had failed were passing Plaintiff's class. Plaintiff "alleges that . . . Finley changed their grades to passing, either as a *quid pro quo* for their statements or simply to demonstrate that they had no motive to retaliate against Plaintiff" (*id*. at ¶¶108-09). Plaintiff was "completely cleared of all charges" on July 13, 2009 (*id*. at ¶169).

Plaintiff alleges that she suffered both physically and mentally during her time in the TRC. Plaintiff alleges that she had been walking "with a slight limp" for "about a year prior to her entry to the 'TRC,'" but had been able to improve her condition by exercising (*id*. at ¶136). After her reassignment, Plaintiff "began doing walking exercises . . . to exercise the muscles of her right hip and leg" in the hallway at the TRC, but nonetheless spent much of her work day sitting (*id*. at ¶¶136, 138). According to Plaintiff, "her mobility decreased dramatically once her physical activity in the gymnasium ended" and by January 2008 she was "relegated to using crutches to ambulate" (*id*. at ¶¶137, 139). Plaintiff "remained on crutches until she eventually had a right total hip replacement on . . . July 9, 2009" (*id*. at ¶138).

Plaintiff also alleges that the TRC also took a mental toll. From December 14, 2007 – when she received a letter directed her to report for the psychiatric exam – until the January 3, 2008, examination, Plaintiff "endured anxiety, trauma, constant fear, sleeplessness and trepidation" (*id*. at ¶¶100, 112). Plaintiff was so worried that she might be found unfit that she obtained two independent psychiatric evaluations at her own expense (*id*. at ¶115). Even after she was found fit, Plaintiff remained fearful, unsure of "what was happening or why it was happen[ing] to her," and whether she would be able to exonerate herself (*id*. at ¶¶122, 128). Her fear was shared by the other teachers at the "overcrowded" TRC, rendering them short-tempered and "territorial," and making the TRC and "emotionally charged," "depressing place" (*id*. at ¶¶119-26, 144).

Plaintiff implies that the disciplinary charges resulted from policies introduced by defendant Joel I. Klein, then Chancellor of the DOE. According to Plaintiff, Klein stated that the DOE needed "new blood" and needed to "'clean house of the old ways' and teachers 'wedded to old methods'" (*id*. at ¶171). Plaintiff alleges that these statements were "signals to purge the system of veteran tenured teachers at the top of the pay scale," and that Klein "intentionally and unlawfully" undermined Plaintiff's "property right" in her tenured position (*id*. at ¶¶171-72).

***Plaintiff's Return to BHSA***

On September 8, 2009, Plaintiff was returned to active service at BHSA (*id*. at ¶178). As the most senior teacher in the school, Plaintiff should have been given her preferred assignment (*id*. at ¶181). However, defendant Margaret Lacey-Berman, who had replaced Finley as the Principal of BHSA, claimed that she had no positions available (*id*. at ¶179). Instead, Lacey-

Berman had Assistant Principal Reedy "assign [Plaintiff] on a daily basis, as needed (*id*. at ¶180).

Initially, Reedy assigned Plaintiff to answer telephones as the school's operator (*id*. at ¶181). After Lacey-Berman stated that she "would not pay Plaintiff to answer the phone," Reedy assigned Plaintiff to teach two yoga classes (*id*. at ¶¶ 182, 186). Upon learning of this assignment, however, Lacey-Berman questioned whether Plaintiff was ready to engage in gym activities so soon afer her hip surgery and sent Plaintiff to the Medical Bureau for clearance (*id*. at ¶187). The Medical Bureau "denied her clearance due to the fact that her physician did not want her to have unrestricted activities quite so soon after her . . . surgery" (*id*. at ¶188).

Plaintiff then applied for a workplace accommodation under Title I of the ADA, asking to teach health for the balance of the Fall semester (*id*. at ¶191). However, Plaintiff was denied that accommodation because Lacey-Berman claimed to need Plaintiff to teach physical education (*id*. at ¶¶192-94). Thereafter, the Medical Bureau found Plaintiff "unfit for duty" effective November 17, 2009, and Lacey-Berman removed Plaintiff from the payroll until she was fit to teach gym classes again (*id*. at ¶¶195-96). As a result, Plaintiff lost wages from November 19, 2009, to January 8, 2010 (*id*. at ¶197).

***The Instant Action***

On February 3, 2010, Plaintiff commenced this action against the DOE, Chancellor Klein, and the BHSA Defendants: Finley, Reedy, Paradis and Lacey-Berman. The six causes of action set forth in Plaintiff's Complaint allege violations of the ADEA, ADA, 42 U.S.C. §1983 and various New York State and City laws. While the Complaint also mentions Title VII of the

Civil Rights Act of 1964 (*id*. at ¶¶1, 8), none of the six causes of action allege violations of this statute.

The first cause of action alleges that defendants' actions violated the ADEA in that they were "undertaken to attempt to force plaintiff to resign or retire earlier than she would otherwise wish to" and "because she opposed defendants' illegal acts of age discrimination" (*id*. at ¶202). This cause of action accuses all defendants of "harassing plaintiff, creating a hostile work environment, and initiating disciplinary charges seeking plaintiff's termination" (*id*.). The first cause of action also alleges "retaliation against plaintiff on the basis of her . . . opposition to age discrimination," but does not specify any allegedly retaliatory actions (*id*. at ¶205).

The second cause of action alleges a violation of the ADA. In this cause of action, Plaintiff asserts that she is physically disabled by virtue of the "hip dysfunction that required a total right hip replacement," that this disability "started before her surgery" and "continued for at least six months post operatively," and that this dysfunction "continues to affect her ability to move about" (*id*. at ¶¶208-09). The second cause of action alleges that all defendants violated the ADA by "harassing plaintiff, creating a hostile work environment, refusing to grant plaintiff accommodations, requiring her to remain at home and lose almost two moths [*sic*] wages, subjecting plaintiff to unfair and abusive tactics, refusing to give her a teaching schedule that accommodated her short term medical needs, [and] not acknowledging that plaintiff was acquitted of all disciplinary charges seeking plaintiff's termination" (*id*. at ¶211). Plaintiff alleges that all of these actions were "taken to deny Plaintiff her tenure [and to] attempt to force plaintiff to retire earlier than she would otherwise wish to, and . . . because of the plaintiff's disability" (*id*.). This cause of action does not specifically allege retaliation, but states that these

actions were undertaken because Plaintiff "opposed defendants' illegal acts of disability discrimination" (*id*.).

The third and fourth causes of action allege violations of the NYSHRL and NYCHRL, respectively. In contrast to the first two causes of action – which specifically allege that "Plaintiff has satisfied all the procedural and administrative prerequisites to suit" (*id*. at ¶¶204, 213) – the third and fourth causes of action do not mention whether Plaintiff ever filed a notice of claim. However, the Complaint does allege that Plaintiff filed an "EEOC Charge" on April 8, 2008 (*id*. at ¶7).

The fifth cause of action alleges that Klein and the BHSA Defendants violated 42 U.S.C. § 1983 ("section 1983" or "§ 1983"). This cause of action principally alleges that these defendants violated Plaintiff's Fourteenth Amendment rights to due process and equal protection of the laws by instituting "false charges," by creating "a hostile work environment" and otherwise discriminating "in the terms and conditions of public employment on the basis of age [and] disability," and by retaliating against Plaintiff for opposing those discriminatory practices (*id.* at ¶225). The § 1983 cause of action also implies that some of these defendants are liable for failing "to remedy the violation of plaintiff constitutional rights after being informed of it," for creating or permitting "a policy or custom under which the unconstitutional practices occurred," for "grossly negligent" supervision of subordinates, and for exhibiting "deliberate indifference by failing to act on information indicating that the unconstitutional acts were occurring" (*id.* at ¶228). In addition, the fifth cause of action implies that the DOE was liable because the "policy or custom of the defendants" was "reviewed by and adopted by" DOE "by virtue of their initiation of disciplinary charges" (*id.* at ¶229).

The sixth cause of action alleges tort claims for "negligent and intentional infliction of emotional distress."  This cause of action does not name specific defendants but alleges that "Plaintiff was subjected to public humiliation, false accusations, verbal abuse, harassment, loss of employment, conduct contrary to public policy, defamation, threat of bringing or prosecution of false charges used to coerce or force resignation, improper initiation and conduct of disciplinary actions, which are designed to prevent Plaintiff from the exercise of her rights to pursue vindication through the 3020-a procedures, and forced submission to embarrassing and unnecessary medical examinations"  (*id.* at ¶236).  Plaintiff alleges that all of these acts were "part of a pattern through which Defendants sought to force Plaintiff to retire or quit," and were "improper and unlawful"  (*id.* at ¶¶237-38).

The body of Plaintiff's Complaint alleges various issues relating to the DOE's disciplinary procedures.  Specifically, a section entitled, "The 3020-a Hearings," alleges that certain deadlines set forth in Education Law §3020-a and in the DOE's collective bargaining agreement were not met and that Education Law §2590-j, which exempts the DOE from certain requirements of §3020-a, "should be struck down" as violating due process (*id.* at ¶¶147-48, 152-167).  However, these issues are not raised in any of the six causes of action or in the *ad damnum* clause.  Rather, the Complaint requests only a declaration that defendants have violated the ADEA, the ADA, the New York State and City Human Rights Law and Article 1 of the New York State Constitution  (*id.* at p. 35).  The Complaint also seeks back pay, liquidated damages and compensatory and punitive damages  (*id.* at pp. 35-36).

***Defendants' Motion to Dismiss***

Defendants now move to dismiss portions of Plaintiff's Complaint. In the first of three points raised in Memorandum of Law in Support of their Motion to Dismiss ("Defendants' Memo"), defendants – noting that Plaintiff's Complaint specifically alleges that Plaintiff filed her EEOC charge on April 8, 2008, and that the ADEA, the ADA and Title VII all require a plaintiff to have filed an EEOC charge within 300 days of the alleged acts of discrimination – argue that (1) the claims that Plaintiff was passed over for the guidance counselor positions in 2003, 2004 and 2005 and (2) the hostile work environment claims arising from the incidents involving Daniel Paradis are time-barred. *See* Defendants' Memo at 4-5. In addition, defendants argue that because claims brought under 42 U.S.C. §1983 and the New York State and City Human Rights Laws are subject to a three-year statute of limitations, claims accruing prior to February 3, 2007, must also be dismissed. *Id*. at 2.

The second point in Defendants' Memo contains four different arguments seeking to dismiss various causes of action for failure to state a claim. First, defendants argue that Plaintiff's due process claim cannot be based on her reassignment to the TRC since she did not have a property interest in a particular assignment and since the process provided exceeded federal constitutional requirements. Second, defendants argue that the State legislature's decision to adopt one disciplinary procedure for DOE employees and another procedure for employees of all other school districts does not violate equal protection because there is a rational basis for this disparate treatment. Third, defendants argue that there is no individual liability under the ADEA, ADA or Title VII; that the allegations of the Complaint itself establish that certain of defendants' actions did not violate the ADEA and ADA; that the Second Circuit

has yet to recognize hostile work environment claims under the ADEA or ADA; and that the Complaint fails to state any hostile work environment claims. Fourth, defendants argue that New York law does not permit claims for intentional infliction of emotional distress to be made against a government entity and that the Complaint does not make out the elements of negligent or intentional infliction of emotional distress.

The third and final point of Defendants' Memo argues that Plaintiff's claims under the New York State and City Human Rights Laws must be dismissed because the Complaint does not allege that Plaintiff filed a notice of claim as required by section 3813 of the New York Education Law. In support of this argument, defendants provide the Declaration of Johnny Velez, a Paralegal Supervisor at the Corporation Counsel's Office, to establish that no notice of claim was ever filed. However, since defendants' argument does not rely on this declaration and since defendants are moving solely pursuant to Fed. R. Civ. P. 12(b)(6), this declaration will not be considered by this Court. *See* Fed. R. Civ. P. 12(d).

Plaintiff has filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Plaintiff's Opposition"), which responds to most – but not all – of defendants' arguments. Notably, Plaintiff does not respond (1) to defendants' assertion that there is no individual liability under the ADEA, ADA or Title VII; (2) to defendants' arguments relating to Plaintiff's sixth cause of action, alleging negligent and intentional infliction of emotional distress; or (3) to the argument that Plaintiff's third and fourth causes of action, alleging violations of the NYSHRL and NYCHRL, must be dismissed because the Complaint does not allege that Plaintiff filed a notice of claim.

Plaintiff responds to all of defendants' other arguments. However, in responding to the first point in Defendants' Memo, Plaintiff affirmatively asserts that any time-barred "[a]ge discrimination claims are cognizable under . . . [§]1983." Plaintiff's Opposition at 8 ("Point II"). Plaintiff's responses and the argument advanced in Point II are addressed in the discussion below.

## DISCUSSION

### The Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a party does not nudge his claims across the line from conceivable to plausible, the complaint must be dismissed. *See id.*

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citation omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable

opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp.*

*Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004).

However, a court can consider "documents attached to the complaint as an exhibit or

incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . .

documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in

bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing

*Cortec Indus., Inc.*, 949 F.2d at 47-48).

### I. Timeliness of Certain Employment Discrimination Claims

The first point in Defendants' Memo argues that any employment discrimination claims

arising from events that occurred prior to June 12, 2007, are time-barred.  Noting that Plaintiff

alleges that she filed a charge of discrimination with the EEOC on April 8, 2008, defendants

argue that the charge was filed more than 300 days after (1) Finley failed to appoint Plaintiff to

guidance counselor positions that opened in September 2003, 2004 and 2005 and (2) the

incidents involving Daniel Paradis in the Fall of 2006.  Accordingly, defendants contend that any

ADEA, ADA or Title VII claims arising from these incidents are time-barred.

Preliminary, this Court notes that Plaintiff does not appear to be raising ADA or Title VII

claims in connection with Finley's failure to appoint Plaintiff or the incidents involving Paradis.

Although the Complaint does not allege precisely when Plaintiff developed the "hip

dysfunction" which constitutes the physical disability underlying Plaintiff's ADA claims, the

Complaint suggests that this disability first manifested itself in a "slight limp" which Plaintiff

developed "about a year prior to her entry to the 'TRC'" – that is, around mid-November 2006,

Complaint at ¶136.  Nothing in the Complaint suggests that Plaintiff herself, much less Finley or

Paradis, was aware of this disability when Finley's failed to appoint Plaintiff to the guidance counselor positions or when the incidents involving Paradis occurred.

Moreover, while the Complaint mentions Title VII in places, *see id*. at ¶¶1, 8, none of the six causes of action allege a violation of Title VII.  Indeed, in responding to defendants' first point, Plaintiff alleges only that "Plaintiff's Age Discrimination Claims are not Time-Barred." Plaintiff's Opposition at 7.  Accordingly, this Court interprets Plaintiff's allegations concerning Finley's failure to appoint Plaintiff as a guidance counselor and the incidents involving Paradis as relating solely to Plaintiff's ADEA claim.

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."  *Tanvir v. New York City Health & Hospitals Corp*., 480 Fed. App'x 620, 621 (2d Cir. 2012) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). The time period for filing the charge of discrimination varies, depending on whether the individual files his charge directly with EEOC or with a state or local agency.  In New York, which has both state and local fair employment agencies, an individual who initially files a grievance with the state or local agency must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred," or within 30 days after receiving notice that the state or local agency has terminated the proceeding, whichever is earlier.  42 U.S.C. §2000e-5(e)(1).  If a charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful employment practice occurred. *Id.*  However, these time limits are not jurisdictional and are, therefore, "subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

In her response to defendants' first argument, Plaintiff does not advance any waiver, estoppel or equitable tolling arguments, but asserts that the "continuing violation" doctrine enables a plaintiff "to recover for injuries sustained before the limitations period . . . ." Plaintiff's Opposition at 7. Citing to *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997), for the proposition that the continuing violation doctrine permits a plaintiff, "in certain circumstances, . . . to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period," Plaintiff asserts that "a reasonable view of the record evidence is that plaintiff was subjected to a practice and policy of mistreatment due to her age." *Id.* at 7-8. Asserting – incorrectly – that "the Complaint makes clear that in 2004, 2005 and 2006, plaintiff was passed over for various positions in favor of considerably younger individuals," Plaintiff argues that the Complaint alleges an "age discrimination practice and policy against her that began in 2004" and "culminat[ed] in 2007 with her banishment to the 'rubber room.'" *Id.* at 8.[3] Plaintiff reasons that since she filed her EEOC charge within 300 days of her November 2007 reassignment to the TRC, the continuing violation doctrine permits recovery for all acts of alleged age discrimination committed since 2004.

Plaintiff's response, however, does not cite to any cases decided after 1997 and, therefore, fails to take into account the impact of *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), upon this area of the law. To be sure, the Second Circuit has long recognized a continuing violation exception to the limitations period for discrimination claims. *See Chin v.*

---

[3]In fact, the Complaint alleges that Plaintiff was "passed over" for guidance counselor positions in three consecutive years, beginning with the 2003-2004 school year. Complaint at ¶¶30-31, 44. Since the school year begins in September, Plaintiff was first passed over in September 2003, not in 2004. Indeed, the Complaint specifically alleges that Plaintiff was passed over for the third time in September 2005. *Id.* at ¶44.

*Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155 (2d Cir. 2012).  Under that exception, "if a . . .

plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of

an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be

timely even if they would be untimely standing alone."  *Id.* at 155-56 (quoting *Lambert v.*

*Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-*

*Gobain Performance Plastics Corp.*, — U.S. —, 131 S.Ct. 1325, 1329-30 (2011)).

In *Morgan*, however, the Supreme Court drew a distinction between discrete acts of

discrimination and the individual acts that contribute to a hostile work environment.  The

Supreme Court held:

> [D]iscrete discriminatory acts are not actionable if time barred,
> even when they are related to acts alleged in timely filed charges.
> Each discrete discriminatory act starts a new clock for filing
> charges alleging that act.

536 U.S. at 113.  The Supreme Court gave several examples of discrete acts, including "failure

to promote, denial of transfer, or refusal to hire."  *Id.* at 114.

 The Supreme Court then contrasted these discrete acts, which were "easy to identify" as

actionable, with the individual acts comprising a hostile work environment claim.  *Id.*  The Court

noted that a hostile work environment claim was "based on the cumulative effect of individual

acts," and that each individual act might "not be actionable on its own."  *Id.* at 115.  Since those

acts might occur "over a series of days or perhaps years," the Court recognized that it was not

possible to pinpoint a "particular day" on which a hostile work environment claim became

actionable.  *Id.*

Although it may be unclear whether the instances in which Plaintiff was passed over for

the guidance counselor position constitute a failure to promote or denial of transfer, it is clear

that these instances fit one or both of these categories and, therefore, fall within the Supreme Court's definition of discrete acts. "Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157. Accordingly, Plaintiff may not recover for these any of these discrete acts – regardless whether it was caused by an ongoing discriminatory policy – because she did not file an EEOC charge within 300 days of Finley's decision to hire someone else for the guidance counselor positions.

In contrast, the acts attributed to Paradis were not discrete acts, actionable on their own. Rather, the Complaint implies that these were individual acts which, together with the decision to transfer Plaintiff to the TRC, had the cumulative effect of creating a hostile work environment. Since Plaintiff's transfer to the TRC did not take place until November 2007 – less than 300 days prior to the filing of Plaintiff's initial EEOC charge – the continuing violation doctrine may be applicable to the incidents with Paradis that occurred in the Fall of 2006. However, because discovery may clarify whether Paradis was acting out of personal animus or at the direction of Finley and others who wished to force the senior and most highly paid teachers out of their jobs, defendants may seek permission to renew this timeliness argument in a post-discovery motion for summary judgment.

## II. Age Discrimination Claims under 42 U.S.C. § 1983

In Point II of Plaintiff's Opposition, Plaintiff asserts that, even if the incidents in which Plaintiff was passed over for the guidance counselor positions are time-barred under the ADEA, they can be raised under 42 U.S.C. §1983. Citing to *Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413 (S.D.N.Y. 2008), and cases cited therein for the proposition that "[a]ge

discrimination claims are cognizable under . . . §1983," Plaintiff asserts that she can include the incidents in which she was passed over as part of an age discrimination claim under § 1983. Plaintiff's Opposition at 8. In the alternative, Plaintiff argues that, even if these incidents are "not . . . cognizable as independent claims, . . . they are . . . admissible as evidence of defendants' intent and motives." Plaintiff's Opposition at 10-11.

Plaintiff's argument appears to misconstrue the holding of *Shapiro*. Section 1983 provides a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "A § 1983 action may not, however, be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). "'A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on *a distinct violation* of a constitutional right.'" *Id.* (quoting *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994)) (emphasis added). Such a plaintiff "cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993).

Relying on *Saulpaugh*, *Shapiro* holds that "the ADEA does not preempt a § 1983 claim for age discrimination in violation of the Equal Protection clause." 561 F. Supp. 2d at 920. In reaching this conclusion, *Shapiro* quoted from a footnote in an unpublished opinion which opines that "the weight of authority in the Second Circuit favors the position that the ADEA does

not preempt claims under § 1983 for age discrimination." *Id.* (quoting *Donlon v. Bd. of Educ.*, No. 06-CV-6027T, 2007 WL 4553932, at *3 n.1 (W.D.N.Y. Dec. 20, 2007)). Plaintiff relies on that language from *Donlon* in asserting that all "[a]ge discrimination claims are cognizable under . . . Section 1983." Plaintiff's Opposition at 8. However, this does not accurately reflect the law in this Circuit. A plaintiff can bring an equal protection claim based on age discrimination, but cannot use violations of employment discrimination statutes as the basis for a §1983 claim. *See Patterson*, 375 F.3d at 225.

Point II in Plaintiff's Opposition makes no effort to articulate an age discrimination claim based on Equal Protection or some other distinct violation of a constitutional right. Rather, Plaintiff quotes to the standard for establishing a prima facie case under the ADEA, *id.* at 9 (citing *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000)), then cites to portions of the Complaint to demonstrate that it pleads the facts necessary to state a prima facie case. Specifically, Plaintiff cites to those portions of the Complaint alleging that she was passed over for guidance counselor positions, and asserts that these allegations, along with her "sudden banishment to a 'rubber room'" and "constructive demotion" upon her return to BHSA support and inference of "a policy of age discrimination since 2004." Plaintiff's Opposition at 10.[4] These are the very facts upon which Plaintiff bases her hostile work environment claim under the ADEA, and do not suggest a distinct constitutional violation.[5]

---

[4]Plaintiff also alleges that "the Complaint makes plain that plaintiff was subject to a disparity in pay that is explainable only with reference to age." Plaintiff's Opposition at 10. However, Plaintiff offers no citations in support of this proposition, and this Court does not read the Complaint as containing any such allegation.

[5]Defendants' Memo raises equal protection and due process arguments relating to the disciplinary proceedings, but does not specifically address the question of whether Plaintiff's

Even if Plaintiff could extend the time limitations applicable to her ADEA claims by recasting them as § 1983 claims, Plaintiff could not recover for Finley's failure to appoint her to the guidance counselor positions in 2003, 2004 and 2005. The statute of limitations for actions under §1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Since section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to §1983 is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001).

A §1983 action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Plaintiff must have learned of Finley's staffing decisions at or near the start of each school year, so Plaintiff's claims relating to Finley's failures to appoint her accrued sometime in September of 2003, 2004, and 2005. Since Plaintiff did not file her Complaint until February 2010, any § 1983 claims relating to these three incidents would be time-barred.

Plaintiff argues, in the alternative, that even if these three incidents are "not . . . cognizable as independent claims, . . . they are . . . admissible as evidence of defendants' intent and motives." Plaintiff's Opposition at 10-11. Plaintiff does not cite to any authority in support

---

Complaint states a §1983 claim for age discrimination in violation of the Equal Protection Clause. Accordingly, while Point II may not articulate a valid §1983 claim, this Court will not *sua sponte* address the question of whether Plaintiff's §1983 cause of action states a claim for age discrimination in violation of the Equal Protection Clause.

of this proposition. However, this Court notes that *Morgan* held that while "discrete discriminatory acts are not actionable if time barred," an employee was not statutorily precluded "from using the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

Since Plaintiff seeks to conduct discovery with respect to these three incidents, this issue is respectfully referred to Magistrate Judge Pollak to hear and determine. *See* 28 U.S.C. § 636 (b)(1)(A). This Court reserves decision on whether evidence uncovered in the course of that discovery will be admissible at a trial in this case.

### III. Plaintiff's Other §1983 Claims

The first two arguments in the second point of Defendants' Memo seek to dismiss Plaintiff's §1983 cause of action, which is predicated on violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. First, assuming that Plaintiff's equal protection claim relates to the manner in which the disciplinary proceedings were conducted, defendants argue that the legislature's decision to adopt one disciplinary procedure for DOE employees and another procedure for employees of all other school districts does not violate equal protection because there is a rational basis for this disparate treatment. Second, assuming that Plaintiff's due process claims also relate to the disciplinary proceedings, defendants argue (1) that Plaintiff's reassignment to the TRC did not deprive her of a property interest and (2) that the disciplinary proceeding satisfied the constitutional requirements.[6]

---

[6]This Court does not read Plaintiff's §1983 claim as relating to the disciplinary proceedings. However, since Plaintiff does not argue that defendants have misconstrued her §1983 claim, this Court will address these arguments.

These same arguments were addressed in *Thomas v. Bd. of Educ.*, No. 09-CV-5167 (SLT)(RLM), 2011 WL 1225972 (E.D.N.Y. Mar. 29, 2011) – a putative class action brought by Plaintiff and five other teachers who had been transferred to the TRC and subjected to disciplinary proceedings by the DOE.  In that case, the defendants – represented by the same Assistant Corporation Counsel who represents defendants in this action – moved to dismiss the plaintiffs' equal protection claims, which specifically alleged that "the amendment of New York State Education Law §§ 2590-j, 3020-a and 3020" denied the plaintiffs equal protection by "treat[ing] New York City different from the rest of the state."  2011 WL 1225972, at *14 (internal quotations omitted, brackets in original).  The defendants also moved to dismiss the plaintiffs' Fourteenth Amendment due process claims on the grounds that the plaintiffs' "property interests were not violated when they were sent to TRCs because [their] salary and benefits were unaffected by this reassignment" and that "the process provided" during the disciplinary hearings "far exceeded what was constitutionally mandated."  *Id*. at *8.

## A. *Equal Protection*

In *Thomas*, this Court granted the defendants' motion to dismiss the equal protection claims.  This Court principally relied on *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420 (S.D.N.Y. 2010), a case brought by the same attorney who drafted the complaint in *Thomas* and in this action.  This Court first summarized the equal protection analysis in *Adams*, which held that the plaintiffs in that case "did not, and could not possibly, identify a 'suspect class' that the New York Education Law disadvantaged or a 'fundamental right' which the law infringed."  *Thomas*, 2011 WL 1225972, at *16 (quoting *Adams*, 752 F. Supp. 2d at 459).  Accordingly, the *Adams* Court applied "the highly deferential rational basis standard." *Adams*, 752 F. Supp. 2d at 460.  After implicitly finding that the defendants' argument "concerning the enormous size of the

DOE relative to every other State school district was sufficient to meet the Government's burden," the *Adams* Court concluded that the plaintiffs in that case could not meet the burden of "negat[ing] every conceivable basis" for the amendments, and dismissed the plaintiffs' equal protection claims. *Id.*

This Court followed the *Adams* approach in dismissing the equal protection arguments in *Thomas*. First, this Court noted that there was "nothing to suggest that the legislation at issue . . . 'utilizes a classification[,] . . . disadvantages a suspect class . . . or . . . infringes upon the exercise of a fundamental right.'" *Thomas*, 2011 WL 1225972, at *16 (citing *Hayden v. Paterson*, 594 F.3d 150, 169 (2d Cir. 2010)). This Court then applied that "the highly deferential rational basis standard," and concluded:

> The relative size of the DOE provides a rational basis for the legislation at issue . . . . Plaintiffs have not negated this basis. Accordingly, this Court agrees with defendants that any equal protection claims relating to legislative amendments to the New York Education Law should be dismissed.

*Id*. at *17.

In this case, as in *Adams* and *Thomas*, Plaintiff does not identify a "suspect class" that the New York Education Law disadvantaged or a "fundamental right" which the law infringed. Indeed, Plaintiff not only applies the rational basis standard, but candidly "concedes that establishing that there is no rational basis for a statute is an uphill battle." Plaintiff's Opposition at 13. Plaintiff makes no attempt to refute the defendants' argument that the relative size of the DOE provides a rational basis for treating DOE employees differently than teachers in the rest of the State, but essentially ignores the argument by baldly alleging, "there does not appear to be any rational basis for the difference . . . ." *Id*. Accordingly, for the same reasons set forth in

*Adams* and *Thomas*, this Court concludes that Plaintiff's Complaint fails to state an equal

protection claim relating to the DOE's disciplinary proceedings.

Even if Plaintiff's Complaint stated an equal protection claim based on the differences in

the disciplinary procedures applicable to DOE teachers, these allegations would not provide a

basis for a §1983 claim against any of the defendants.  As this Court noted in *Thomas*:

> In order to maintain a § 1983 action, a plaintiff must allege both
> that the conduct complained of was "committed by a person acting
> under color of state law" and "deprived a person of rights,
> privileges, or immunities secured by the Constitution or laws of the
> United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).
> Moreover, "[i]t is well settled in this Circuit that 'personal
> involvement of defendants in alleged constitutional deprivations is
> a prerequisite to an award of damages under § 1983.'" *Wright v.
> Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of
> Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).
>
>       \*     \*     \*
>
> [N]one of the defendants named in this action can be held
> personally liable for actions of the State legislature. Accordingly,
> . . . equal protection claims relating to legislative amendments to
> the New York Education Law . . . could not be raised against the
> named defendants pursuant to 42 U.S.C. § 1983.

2011 WL 1225972, at *17.

### B.  Procedural Due Process

This Court also addressed both of defendants' due process arguments in the course of

deciding *Thomas*.  First, principally relying on *Adams*, this Court held that the DOE had not

deprived the *Thomas* plaintiffs of a property interest by sending them to the TRC because they

continued to receive the same pay and benefits.  *Id*. at *9-10.  Although this Court cited authority

for the proposition that "a teacher suspended with pay . . . who resigns may have grounds to

bring a procedural due process claim . . . if he can state a claim of constructive discharge," *id*. at

*9 (quoting *Adams*, 752 F. Supp. 2d at 430 (citing *O'Connor v. Pierson*, 426 F.3d 189, 200 n.5

26

(2d Cir. 2005)), it noted that none of the plaintiffs in *Thomas* had "expressly assert[ed] constructive discharge either as a distinct claim or as a theory of liability." *Id.* at \*10.

Second, this Court found that the procedures followed by the DOE in conducting disciplinary hearings passed constitutional muster. Again, this Court principally relied on *Adams*, which held that the DOE's procedures provided a teacher with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story, as due process requires." *Id.* at \*10 (quoting *Adams*, 2010 WL 4742168, at \*30) (internal quotations omitted). However, this Court noted that the complaint in *Thomas* alleged due process violations not alleged in *Adams*. In particular, this Court noted that the complaint in *Thomas* alleged "that tenured New York City teachers who are accused of 'misconduct that could be construed as an inappropriate relationship or inappropriate touching of a student'" were removed from the payroll "without being given the opportunity to testify or present witnesses in their own behalf." *Id.* at \*10. This Court held that that allegation at least suggested a viable due process claim. *Id.*

In this case, as in *Thomas*, the Complaint does not allege constructive discharge. Indeed, Plaintiff continued to work for the DOE throughout the time she spent in the TRC, and was ultimately cleared of all disciplinary charges and returned to BHSA. In addition, in this case, unlike in *Thomas*, Plaintiff does not allege facts suggesting a viable procedural due process claim. Accordingly, for the reasons set forth in *Thomas*, Plaintiff's procedural due process claims are dismissed to the extent that they relate to DOE's disciplinary proceedings.

### C. Substantive Due Process

Plaintiff's Opposition does not address defendants' procedural due process arguments, but alleges that the Complaint makes out "a prima facie case of substantive due process." Plaintiff's Opposition at 14. Plaintiff asserts that "the end result of plaintiff's 3020-a charges and the hearing are 'shocking to the conscience'" because Plaintiff, after being exonerated, was "subjected to a humiliating demotion." *Id*. at 15. Plaintiff asserts that the Complaint Plaintiff "has alleged plausible facts which establish[] a 'shocking' disconnect between her 3020-a victory and defendants' refusal to return her to her prior position." *Id*.

In their Reply Memorandum of Law in Further Support of their Motion to Dismiss ("Defendants' Reply"), defendants advance two arguments in opposition to Plaintiff's substantive due process claim. First, defendants assert that defendants failure to immediately restore Plaintiff to the duties she held prior to her reassignment to the TRC does not rise to the level of a substantive due process violation. Second, citing to *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986), for the proposition that substantive due process "does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer," defendants argue that the conduct which allegedly violated substantive due process does not constitute not an abuse of governmental authority.

This Court agrees with defendants. The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)). Procedural due process requires that government action depriving an individual of substantial interests in life, liberty or property "be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739,

746 (1987). Substantive due process bars "certain government actions regardless of the fairness of the procedures used to implement them," in order to "prevent governmental power from being used for purposes of oppression." *Daniels*, 474 U.S. at 331 (internal quotations and citation omitted).

Improper actions taken by an employer do not violate an employee's substantive due process rights "simply because that employer is a government official." *McClary*, 786 F.2d at 89. Rather, an employer's conduct violates substantive due process "only if the employer 'abuses some power unique to its role as a governmental entity.'" *Perfetto v. Erie County Water Authority*, No. 03-CV-0439E(F), 2006 WL 1888556, at *10 (W.D.N.Y. July 7, 2006) (quoting *Sussman v. New York City Health & Hosps. Corp.*, No. 94 Civ. 8461 (DBS), 1997 WL 334964, at * 12 (S.D.N.Y. June 16, 1997)). Substantive due process "does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." *McClary*, 786 F.2d at 89. Moreover, substantive due process is not violated by every wrongful act, but only "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. at 746 (internal quotations and citations omitted).

In this case, the DOE is not alleged to have abused "some power unique to its role as a governmental entity." *Perfetto*, 2006 WL 1888556, at *10. Rather, defendants are alleged to have engaged in acts of employment discrimination by failing to accommodate Plaintiff's disability and by instead forcing her to answer telephones, then take a leave of absence. While these allegations may be sufficient to state an employment discrimination claim, the fact that the discrimination was allegedly committed by a government entity does not transform these

employment discrimination claims into violations of substantive due process. Moreover, these alleged actions do not shock the conscience or interfere with rights implicit in the concept of ordered liberty. *See Salerno*, 481 U.S. at 746 (1987). Accordingly, to the extent that Plaintiff's Complaint alleges any §1983 claims based on violations of substantive due process, those claims are dismissed.

## IV. *Plaintiff's Claims Under the ADA and ADEA*

The third argument raised in the second point of Defendants' Memo raises three arguments relating to Plaintiff's claims under the ADA and ADEA. First, defendants assert that "there is no individual liability under the ADEA, the ADA, or Title VII, and therefore such claims against all individual defendants must be dismissed." Defendants' Memo at 11. Second, defendants assert that the Complaint does not allege a prima facie case under the ADA or the ADEA. Third, defendants claim that the Second Circuit has yet to recognize hostile work environment claims under with the ADEA or ADA and, in any event, that Plaintiff's Complaint does not allege facts sufficient to make out such hostile work environment claims.

### A. *Individual Liability*

Plaintiff's Opposition does not respond to the first of these three arguments. A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Williams v. Mirabal*, No. 11 Civ. 366 (JMF), 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) (quoting *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)); *see also Robinson v. Fischer*, No. 09 Civ. 8882 (LAK)(AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting cases).

Accordingly, this Court deems Plaintiff to have abandoned any employment discrimination claims brought against defendant Klein or the BHSA Defendants in their individual capacities.

Even if these claims were not deemed abandoned, the law with respect to this issue appears settled. The Second Circuit has "determined that the remedial provisions of Title VII, including [42 U.S.C.] § 2000e-5, do not provide for individual liability." *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). Relying on the rationale in *Tomka*, courts have held that there is no individual liability under the ADEA or ADA. *See Guerra v. Jones*, 421 Fed. App'x 15, 17 (2d Cir. 2011) ("dismissal of the Title VII and ADEA claims against the individual Defendants was appropriate as neither statute subjects individuals, even those with supervisory liability over the plaintiff, to personal liability"); *Anand v. New York State Dep't of Taxation & Finance*, No. 10-CV-5142 (SJF) (WDW), 2012 WL 2357720, at *7 (E.D.N.Y. June 18, 2012) (ADA does not "provide for individual liability"); *Doe v. Major Model Mgmt. Inc.*, No. 11 Civ. 6182 (KBF), 2012 WL 763556, at *7 (S.D.N.Y. Mar. 9, 2012) ("The ADA applies to employers: it does not confer individual liability.")

### B. *Prima Facie Case under the ADA*

In arguing that Plaintiff has not alleged a prima facie case under the ADA, defendants assume that Plaintiff's ADA claim (1) alleges a failure to accommodate Plaintiff's alleged physical disability and (2) relates to the decision not to permit Plaintiff to teach the yoga classes to which Reedy had assigned her. Defendants first note that in order to make out a prima facie case of disability discrimination arising from a failure to accommodate, a plaintiff must show,

*inter alia*, that "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue . . . and . . . that the employer has refused to make such accommodations." Defendants' Memo at 11 (citing *McBride v. BIC Consumer Products Mfg. Co., Inc*., 583 F.3d 92, 96-97 (2d Cir. 2009)). Defendants then point out that Plaintiff's Complaint itself concedes that Plaintiff was not granted medical clearance to teach the yoga class because "her physician did not want her to have unrestricted activities" so soon after her hip surgery. *Id*. (quoting Complaint at ¶188). Defendants conclude that Plaintiff's ADA claim fails because Plaintiff could not "perform the essential duties of her physical education teacher position . . . and . . . there was no requirement that . . . Lacey-Berman reassign another teacher mid-semester or create a new position to reasonably accommodate plaintiff." *Id*. at 11-12.

Plaintiff's Opposition, however, implies that defendants' assumptions are incorrect. First, Plaintiff cites to the elements of a prima facie case for discriminatory discharge, Plaintiff's Opposition at 11 (citing *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)), thereby implying that her ADA claim relates to Lacey-Berman's decision to place Plaintiff on unpaid leave even though Plaintiff was physically capable of teaching health classes. Second, Plaintiff implies that her failure to accommodate claim relates to Lacey-Berman's refusal to permit her to teach health, not the decision not to permit her to teach yoga, by stating: "The Complaint also plausibly alleges that plaintiff requested a reasonable accommodation of being assigned to teach health classes as opposed to physically-challenging Yoga classes." *Id*. at 12

Even if defendants' assumption were correct, defendants' argument would fail because it is based on numerous, questionable factual assumptions. First, defendants assume, based solely on the fact that Plaintiff was not capable of teaching yoga, that Plaintiff was incapable of

performing the essential functions of the physical education position.  Second, defendants

assume that accommodating Plaintiff's disability would have necessitated "reassign[ing] another

teacher mid-semester or creat[ing] a new position."  Defendants' Memo at 11-12.  In fact, the

Complaint alleges that Plaintiff was cleared of the disciplinary charges in July 2009; returned to

BHSA on September 8, 2009, at the very start of the 2009-2010 term; and, as the "senior-most

teacher in the entire school, . . . should have been given her preferred assignment."  Complaint at

¶¶169, 178, 181).

### C. Prima Facie Case under the ADEA

In arguing that Plaintiff has not alleged a prima facie case under the ADEA, defendants

rely exclusively on *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167 (2009) – a decision rendered on

an appeal from a civil judgment finding in favor of an ADEA plaintiff.  In *Gross*, the Supreme

Court granted certiorari to decide whether direct evidence of age discrimination was necessary to

obtain a mixed-motive jury instruction in a case brought under the ADEA.  The Court did not

answer that specific question, holding instead that a mixed-motive jury instruction was never

proper in an ADEA discrimination case.  The Court reasoned that unlike Title VII, which

explicitly authorizes discrimination claims in which an improper consideration was "a

motivating factor" for an adverse employment decision, the ADEA does not authorize claims in

which the adverse employment action was based both on permissible and impermissible factors.

*Gross*, 557 U.S. at 173-74.  Accordingly, the Court held that a plaintiff bringing a disparate

treatment claim under the ADEA must prove that age was a "but-for" cause of the challenged

adverse employment action.

Relying on *Gross*, defendants principally argue that Plaintiff's Complaint "does not allege anything plausibly suggesting that [Plaintiff's] age was the 'but for' cause of her reassignment to a TRC," but instead "acknowledges that her reassignment [was] . . . precipitated by written student statements to Mr. Finley regarding highly inappropriate comments . . . ." Defendants' Memo at 12.[7]  This argument, however, ignores those allegations in the Complaint which assert that the students' statements were fabricated at the behest of Finley.  The Complaint specifically alleges that two of the statements were made by students who were not enrolled in any of Plaintiff's classes.  Complaint at ¶105.  The other four statements were made by students who received failing grades from Plaintiff, but subsequently managed to have those grades changed to passing.  *Id*. at ¶¶106, 108.  Based on these facts, Plaintiff infers that Finley changed their grades to passing in exchange for their statements. *Id*. at ¶109.  Accordingly, the allegations in Plaintiff's Complaint do not concede that Plaintiff's reassignment to the TRC was based, at least in part, on proper motives.

### D.  Hostile Work Environment Claims under the ADA and ADEA

In their third and final argument with regards to Plaintiff's ADA and ADEA claims, defendants seek to dismiss Plaintiff's hostile work environment claims on two grounds.  First, defendants assert that the Second Circuit has yet to recognize hostile work environment claims under these statutes.  Defendants' Memo at 12-13.  Second, defendants argue that, even if such

---

[7]Defendants also argues that the Complaint "does not allege any facts to infer an ADEA claim" against Lacey-Berman, Reedy or Paradis.  Defendants' Memo at 12.  Since this Court has already dismissed the ADEA claims against all individual defendants, *see* pp. 30-31, *ante*, this Court need not address this argument.

claims can be brought, Plaintiff's Complaint does not allege facts sufficient to make out such hostile work environment claims.

### 1. Hostile Work Environment under the ADEA

As regards the ADEA, defendants' arguments are without merit. The only case which defendants cite in support of the first argument is *Grey v. United Techs. Corp.*, No. 97-7988, 1998 U.S. App. LEXIS 22522 (2d Cir. Mar. 13, 1998) – an unpublished opinion in which the Second Circuit noted that it had "not previously recognized a hostile work environment cause of action under the ADEA." *Id.* at *2. However, this Court notes that in several published opinions issued since 1999, the Second Circuit has analyzed hostile work environment claims brought under the ADEA without any caveats of the sort found in *Grey*. *See*, *e.g.*, *Kassner v. 2d Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) ("An actionable discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment. . . ." ) (internal quotations omitted); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) ("The same standards [used to analyze hostile work environment claims under Title VII] apply to hostile work environment claims brought under the ADEA"); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII.").

As noted in the parenthetical comments above, these cases have analyzed these cases under Title VII standards. "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is

objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected class]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotations omitted; brackets added). Although it is clear that a workplace "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" violates Title VII and that the "'mere utterance of an . . . epithet which engenders offensive feelings in a employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII," there is no "mathematically precise test" to determine when a work environment qualifies as hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). Rather, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances[,]" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23.

Applying this standard, this Court finds that Plaintiff's Complaint states a claim for hostile work environment under the ADEA. The Complaint alleges that DOE Chancellor Klein, in stating that the DOE needed "new blood" and to "'clean house of the old ways' and teachers 'wedded to old methods,'" signaled that he wanted "to purge the system of veteran tenured teachers at the top of the pay scale." Complaint at ¶171. The Complaint further alleges that, in accordance with Klein's wishes, Finley encouraged Paradis to harass Plaintiff, *id*. at ¶74, and

agreeing to change the grades of students from failing to passing in order to obtain their assistance in fabricating disciplinary charges against Plaintiff, *id*. at ¶175. As a result of these fabricated charges, Plaintiff was transferred to the TRC where, the Complaint alleges, "conditions are intentionally made to induce constructive termination." *Id*. at ¶159.

Although the Complaint does not allege many facts in support of this hostile work environment claim, the claim is not entirely speculative. As noted above, the Complaint alleges that four of students to whom Plaintiff had given failing grades had their grades changed to passing after they accused Plaintiff of misconduct. *Id*. at ¶¶106, 108. The Complaint also alleges that Finley "encouraged . . . students to whisper behind her back as they went around and signed a petition to have her fired." *Id*. at ¶174. In addition, Plaintiff alleges that Paradis exhibited knowledge of Plaintiff's salary, which he could only have learned from the school administration, and that the administration took no action against Paradis, even after he nearly attacked Plaintiff. *Id*. at ¶¶58-60, 71-72.

## 2. *Hostile Work Environment under the ADA*

In contrast, this Court largely concurs with defendants' arguments relating to the hostile work environment claim under the ADA. First, the Second Circuit has not yet decided whether the ADA provides a basis for a hostile work environment claim. *Margherita v. FedEx Exp*., No. 11-4859-cv, 2013 WL 452527, at *2 (2d Cir. Feb. 7, 2013) (summary order). Nonetheless, as defendants themselves note, *see* Defendants' Memo at 12, many district courts have assumed without deciding that a claim for hostile work environment can be brought under the ADA and analyzed the claim using standards borrowed from Title VII caselaw. *See*, *e.g.*, *Fossesigurani v. City of Bridgeport Fire Dep't*, No. 3:11-cv-752 (VLB), 2012 WL 4512772, at *7 (D.Conn. Oct.

1, 2012); *Lupe v. Shinseki*, No. 1:10-CV-198 (MAD/ATB), 2012 WL 3685954, at \*20 (N.D.N.Y. Aug. 24, 2012).

Applying the Title VII standard, this Court finds that Plaintiff's Complaint does not state a claim for hostile work environment under the ADA. The Complaint does not allege any facts to suggest that Paradis's or Finley's actions related to Plaintiff's disability. Indeed, the Complaint implies that Plaintiff exhibited no signs of a disability until November 2006, a month after her difficulties with Paradis began. Complaint at ¶136. Thereafter, she developed "a slight limp," which was improving at the time she entered the TRC. *Id.* However, there is nothing in the Complaint to suggest that Finley, Paradis or any of the students at BHSA noticed this limp or inferred from it that Plaintiff was disabled during the time that they allegedly orchestrated her transfer to the TRC. Moreover, while the Complaint alleges that the behavior of the DOE personnel at the TRC was "different from the behavior toward other teachers," *id*. at ¶141, it does not allege that she was treated worse than other teachers because of her disability. To the contrary, the Complaint alleges that "Defendants changed the terms, conditions and privileges of [her employment] . . . on the basis of her age, tenured status and years of experience." *Id*. at ¶142.

While Lacey-Berman and Reedy were well aware of Plaintiff's alleged disability when she returned to BHSA in September 2009, the Complaint does not allege facts to suggest that these defendants subjected Plaintiff to an environment that a reasonable person would find hostile or abusive. Not only is there no suggestion that BHSA was "permeated with 'discriminatory intimidation, ridicule, and insult,'" there is no allegation of a single "utterance of an . . . epithet." See *Harris*, 510 U.S. at 21-22 (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 65,

67.   Rather, the Complaint suggests, at most, that Lacey-Berman refused to accommodate Plaintiff's disability, thereby forcing her to take a leave of absence.  Accordingly, this Court finds that the circumstances alleged in the Complaint do not make out, or even suggest, a hostile work environment claim under the ADA.

## V.  Negligent and Intentional Infliction of Emotional Distress

The fourth and final argument raised in the second point of Defendants' Memo contends that New York law does not permit claims for intentional infliction of emotional distress to be made against a government entity and that the Complaint does not make out the elements of intentional or negligent infliction of emotional distress.  Plaintiff's Opposition does not address these contentions.

As noted above, *see* p. 30, *ante*, a court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Williams*, 2013 WL 174187, at *2; see also *Robinson*, 2010 WL 5376204, at *10. Accordingly, in light of Plaintiff's failure to address defendants' arguments relating to her cause of action for negligent and intentional infliction of intentional distress, this Court deems Plaintiff's sixth cause of action to be abandoned.

Even if this Court were not to deem the sixth cause of action to be abandoned, however, it would dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress. First, "New York public policy 'bars claims sounding in intentional infliction of emotional distress against a governmental entity.'" *Collins v. City of New York*, — F. Supp. 2d —, No. 11-CV-766 FB RML, 2013 WL 563436, at *15 (E.D.N.Y. Feb. 15, 2013) (quoting *Lauer v. City of New York*, 659 N.Y.S.2d 57, 58 (N.Y. App. Div. 1997)); *see also Payne v. N.Y. City Police*

*Dep't*, 863 F. Supp. 2d 169, 189 (E.D.N.Y. 2012) (citing *Ellison v. City of New Rochelle*, 62 A.D.3d 830, 833, 879 N.Y.S.2d 200 (N.Y. App. Div. 2009)). Second, to make out a claim of negligent or intentional infliction of emotional distress, a plaintiff must plead conduct "so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community." *Liang v. Café Spice SB, Inc.*, — F. Supp. 2d —, No. 09-CV-1306 (JFB)(ETB), 2012 WL 5988766, at *22 (E.D.N.Y. Nov. 29, 2012); *Biberaj v. Pritchard Industries, Inc.*, 859 F. Supp. 2d 549, 564-65 (S.D.N.Y. 2012). The conduct alleged in this case does not rise to that level.

## VI. Notice of Claim

The third point of Defendants' Memo seeks to dismiss the causes of action brought pursuant to the NYSHRL and NYCHRL on the ground that Plaintiff never filed a notice of claim. Specifically, defendants argue that compliance with the notice of claims requirements of section 3813(1) of the New York Education Law is a "prerequisite for a suit naming a school district or its officers," and that "Plaintiff's failure to plead compliance with New York's notice of claim requirements mandates dismissal." Defendants' Memo at 14.

Plaintiff's Opposition does not address this argument. As noted at pp. 30 and 38, *ante*, this failure to respond alone justifies dismissal of Plaintiff's third and fourth causes of action. However, even if this Court were not to deem these causes of action to be abandoned, this Court would be compelled to dismiss Plaintiff's claims under the New York State and City Human Rights Laws.

Section 3813(1) of the New York Education Law provides, in pertinent part:

> No action or special proceeding, for any cause whatever, . . . or
> claim against the district or any such school, or involving the rights

> or interests of any district or any such school shall be prosecuted or
> maintained against any school district, board of education, . . . or
> any officer of a school district, board of education, . . . or school
> . . . unless it shall appear *by and as an allegation in the complaint*
> or necessary moving papers that a written verified claim upon
> which such action or special proceeding is founded was presented
> to the governing body of said district or school within three
> months after the accrual of such claim, and that the officer or body
> having the power to adjust or pay said claim has neglected or
> refused to make an adjustment or payment thereof for thirty days
> after such presentment. (Emphasis added).

"[D]istrict courts in this Circuit have consistently held that the notice requirement of § 3813(1) applies to NYSHRL discrimination claims unless those claims seek to vindicate a public interest." *Gray v. City of New York*, No. 10-CV-3039 (SLT)(CLP), 2012 WL 947802, at *16 (E.D.N.Y. Mar. 20, 2012) (citing cases).

Under §3813(1), "[s]ervice of a notice of claim to the proper 'governing body' of the school is a condition precedent to any action against a school district." *Tomici v. N.Y. City Dep't of Educ.*, — F. Supp. 2d —, No. 11-CV-2173, 2012 WL 6608510, at *11 (E.D.N.Y. Dec. 19, 2012) (citing *Parochial Bus Sys., Inc. v. Bd. of Educ. of N.Y.*, 60 N.Y.2d 539, 547 (1983)). Moreover, this section specifically requires a plaintiff to plead compliance with § 3813(1)'s notice of claim requirements. *See*, *e.g.*, *Edwards v. Jericho Union Free Sch. Dist.*, — F. Supp. 2d —, No. 11 CV 3261 (DRH)(WDW), 2012 WL 5817281, at *5 (E.D.N.Y. Nov. 16, 2012) (citing cases); *Birkholz v. City of New York*, No. 10-CV-4719 (NGG)(SMG), 2012 WL 580522, at * (E.D.N.Y. Feb. 22, 2012); *Chapman v. City of New York*, No. 06-CV-3153 (ENV)(JMA), 2011 WL 1240001, at *13 (E.D.N.Y. Mar. 30, 2011). "Failure to satisfy [§ 3813's] requirements is 'fatal' to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court." *Tomici*, 2012 WL 6608510, at *11.

The Complaint in this case does not allege that Plaintiff has complied with the notice of claims requirements. It does, however, allege that Plaintiff filed a charge of discrimination with the EEOC on April 8, 2008. Complaint at ¶7. Some courts in this district have opined that a charge filed with the EEOC may, under some circumstances, satisfy § 3813's notice of claim provisions. *See*, *e.g.*, *id.*; *Brtalik v. South Huntington Union Free Sch. Dist.*, No. 10-CV-0010, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010); *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003). However, that EEOC charge must meet the specific requirements of § 3813, including the requirement that it be served on the proper "governing body" of a school and be served within three months after the accrual of a claim. *See*, *e.g.*, *Tomici*, 2012 WL 6608510, at *12 (EEOC charge served more than three months after accrual of claim); *Mansuetta v. Clarkstown Cent. Sch. Dist.*, No. 11-CV-649 (VB), 2012 WL 5992171, at *8 (S.D.N.Y. Nov. 13, 2012) ("To the extent plaintiff contends her EEOC charge is somehow an adequate substitute for a timely filed notice of claim, that argument fails because her EEOC charge was not filed within ninety days of the District's decision not to grant plaintiff tenure."); *Brtalik*, 2010 WL 3958430, at *5 (EEOC charge not served on the School District's governing body).

In this case, the EEOC charge was not served within three months after the accrual of any of the adverse employment actions alleged in the Complaint. "[A]n employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to plaintiff . . . ." *Tomici*, 2012 WL 6608510, at *11 (quoting *Pinder v. City of New York*, 49 A.D.3d 280, 853 N.Y.S.2d 312, 313 (N.Y. App. Div. 2008)). Plaintiff was first advised of her transfer to the TRC on November 16, 2007 – more than four months prior to the filing of the EEOC charge. Complaint at ¶95. No other adverse employment actions took place until after

the EEOC charge was filed on April 8, 2008.  Accordingly, the allegations in the Complaint concerning the EEOC charge do not satisfy § 3813's requirements.

## CONCLUSION

For the reasons set forth above, defendants' motion is granted in the following respects. With respect to the first two causes of action, Plaintiff's hostile work environment claims under the ADA are dismissed, as are all ADEA, ADA and/or Title VII claims brought against defendants Klein, Finley, Reedy, Lacey-Berman and Paradis in their individual capacities.  Any employment discrimination claims relating to Finley's 2003, 2004, and 2005 decision not to appoint Plaintiff as a guidance counselor are dismissed as time-barred.  The question of whether Plaintiff may conduct discovery with respect to these three decisions is respectfully referred to Magistrate Judge Pollak to hear and determine.  This Court reserves decision on whether evidence uncovered in the course of that discovery, if any, will be admissible at a trial in this case.

Plaintiff's third and fourth causes of action – alleging violations of the NYSHRL and NYCHRL, respectively – and the sixth cause of action, alleging negligent and intentional infliction of emotional distress, are dismissed.  To the extent that Plaintiff's fifth cause of action, alleging violations of 42 U.S.C. §1983, includes claims based on (1) due process and equal protection violations relating to the DOE's disciplinary proceedings, (2) violations of employment discrimination statutes, or (3) violations of substantive due process based on Plaintiff's treatment following her return to BHSA, those claims are dismissed.  This Court expresses no opinion as to whether Plaintiff's Complaint states a §1983 claim based on due process or equal protection violations arising from age discrimination.

Defendants' motion to dismiss is denied in all other respects.

**SO ORDERED.**

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: March 29, 2013
       Brooklyn, New York