UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

ANNA-MARIA THOMAS, Ed.D.,

                    Plaintiff,              **MEMORANDUM & ORDER**
                                            10-CV-0464(EK)(CLP)

          -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION, et al.

                    Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Anna-Maria Thomas, a retired health and

physical education teacher, brought this action in 2010,

alleging discrimination based on her age and disability.

Defendants move for summary judgment on all claims.  For the

reasons set forth below, Defendants' motion is granted.

## I.   Background

          At the time she filed the instant action, Plaintiff

was sixty-four years old and had been employed by the Department

of Education ("DOE") for over thirty-five years.  Throughout her

career, she received "satisfactory, if not exemplary,"

performance evaluations, and was at one point in the 1980s

elected "Teacher of the Year" at a high school in Manhattan.

Complaint ¶¶ 18, 19, ECF No. 1 ("Compl.").  In the early 2000s,

she was recruited to work at the Brooklyn High School of the

Arts ("BHSA") by its founding principal, Robert Finley. *Id.*
¶¶ 14, 25, 26, 30.

Eventually, Plaintiff's experience there deteriorated.
She had conflicts with another teacher, Daniel Paradis, and was
the subject of a disciplinary investigation concerning whether
she had made inappropriate comments to students. The
disciplinary proceedings led to Plaintiff's reassignment from
the school for nearly two years. She later came to believe that
Principal Finley colluded with other school officials to oust
her because of her age and high salary. These others include
Paradis and former New York City Schools Chancellor Joel Klein.
*See, e.g.*, Plaintiff's Memorandum in Opposition to Summary
Judgment at 3 ("Pl. Opp.") (referring to a "collusive action
orchestrated by DOE Defendants Klein and Finley . . . to remove
me, the most expensive teacher" at BHSA).

The Plaintiff did not file the statement required by
Rule 56.1 of the Local Rules of the United States District
Courts for the Southern and Eastern Districts of New York.
Given her *pro se* status, the following factual recitation is
drawn from the evidentiary record, including her deposition
testimony, and the uncontested evidence identified in the
Defendants' Local Rule 56.1 Statement of Undisputed Material

Facts ("Def. 56.1").[1]  This evidence is read in the light most favorable to the non-moving party — here, the Plaintiff.

## A.    Incidents Involving Daniel Paradis

In 2006, Plaintiff was paired with Paradis to "team-teach" physical education.  Def. 56.1 ¶¶ 17-18.  Plaintiff taught the girls and Paradis taught the boys.  *Id.* ¶ 19; Plaintiff's Deposition Transcript Excerpts, ECF No. 87-2 at 927:20-928:17 ("Pl. Dep.").  By all accounts, Plaintiff's time with Paradis was trying.

A couple of months into the team-teaching arrangement, Plaintiff went to retrieve gym equipment from a common-use room.  *See* Def. 56.1 ¶¶ 23-24.  Paradis approached Plaintiff, shouted at her for taking the equipment from his office, and called her "crazy."  *Id.*  Plaintiff testified that Paradis asked her, some time later, "when are you going to retire?" and noted that she was "the highest paid teacher."  Pl. Dep. at 40:1-4.

Following this incident, Plaintiff no longer felt comfortable around Paradis and requested that school

───────────────

[1]Although Plaintiff did not file a Rule 56.1 counter-statement, she did file a sworn affidavit with her brief in opposition to Defendants' motion. *See* ECF No. 106.  Given her *pro se* status, the Court has undertaken a searching review of the underlying record evidence submitted by the parties. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (district court has discretion not to apply Local Rule 56.1 to a *pro se* party's failure to file a counter-statement, and review the record *de novo*); *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) (district court may, in its discretion, opt to "conduct an assiduous review of the record" where one of the parties has failed to file the 56.1 statement).

administrators admonish him for his conduct.[2]  Def. 56.1 ¶ 25;

Pl. Dep at 29:15–17.  The United Federation of Teachers mediated

the conflict between Plaintiff and Paradis, but the situation

remained unresolved.  *Id.* at 50:3–9.  Assistant Principal John

Reedy then convened a meeting with Plaintiff and Paradis, during

which they agreed to set aside their differences and focus on

the students.  *See* Rodney Harris Letter, dated June 23, 2008,

ECF No. 87-9.

At some point — the date is unclear — Plaintiff sought

an order of protection against Paradis because she was

unsatisfied with her supervisors' response to her complaints.

*See* Pl. Dep. at 29:2–11; *see also* Incident Information Slip, ECF

No. 106-4.  Plaintiff was denied the order of protection.  Pl.

Dep. at 29:8–11.  Paradis also submitted a harassment complaint

to the police concerning an incident with Plaintiff, alleging

that Plaintiff threatened to have someone "kick his ass" during

a dispute.  Paradis Police Report, ECF No. 87-6.

---

[2] In her complaint, Plaintiff alleges that Paradis made other vaguely
threatening comments as well, but she has adduced no evidence to support
their occurrence.  *E.g.*, Compl. ¶ 57 ("As Plaintiff entered his class to
retrieve her students . . . Paradis became highly irate and made various
utterances to indicate that he believed that plaintiff was overreaching
her authority in retrieving her own students.").  None of these other comments
expressly invoke Plaintiff's age; instead, they appear more indicative of
general dislike between the two.  In any event, these comments do not appear
in Plaintiff's deposition testimony or elsewhere in the record.

**B.    Plaintiff's Relegation to a Teacher Reassignment Center**

According to the Defendants' Rule 56.1 statement, in October 2007, certain BHSA students brought complaints regarding Plaintiff's behavior to the school's Dean of Students, Leonard Bennett.  Def. 56.1 ¶ 41.  The students reported that Plaintiff made various inappropriate and sexually charged remarks.  3020-a Opinion and Award, dated July 13, 2009 at 2, ECF No. 87-13 ("3020-a Opinion and Award").[3]  Bennett reported this to Finley. Finley asked the students if they would put their concerns in writing, which they proceeded to do.  Def. 56.1 ¶¶ 42-44; *see also* Robert Finley 3020-a Hearing Transcript at 313:7-314:2, ECF No. 87-4 ("Finley Hearing Tr."); Leonard Bennet 3020-a Hearing Transcript at 408:18-22, ECF No. 87-5 ("Bennett Hearing Tr.").

Finley met with the students, reviewed their statements, and asked them if other individuals could corroborate their statements.  Def. 56.1 ¶ 44.  After receiving what he took to be corroboration, Finley reported Plaintiff to the Special Commissioner of Investigation for The New York City School District.  November 2007 SCI Complaint Form, ECF No. 87-12.  The Special Commissioner referred the matter to the Office

---

[3] According to a decision filed by the presiding officer following a hearing on Plaintiff's alleged misconduct, Plaintiff purportedly told students that if their semen was salty, they should drink more water; that they should masturbate; and that they should drink their urine, among other things.  *See* 3020-a Opinion and Award.

of Special Investigations ("OSI"). *See* 3020-a Opinion and Award. Finley testified that he was told he "was not to handle the investigation, that, in fact, [OSI] would handle the investigation." Finley Hearing Tr. at 317:12-19. Plaintiff was notified that she was being moved to a Teacher Reassignment Center ("TRC") — referred to by Plaintiff as one of the "infamous 'rubber rooms,'" see Compl. ¶ 2 — pending investigation into the allegations. Reassignment Documents, ECF No. 87-14.

Plaintiff disputes the preceding facts. She contends that the students' allegations were "created by Defendant Finley to besmirch [her] credibility as an educator." Affidavit of Thomas, Ed. D in Opposition to DOE Defendants' Motion for Summary Judgment at 3, ECF No. 106. She testified that the students were "coerced to make these statements" at the behest of Finley, and that Finley altered the grades of the students who made the allegations as a reward. Pl. Tr. at 71:10-75:17.

OSI Investigator Zoraida Diaz investigated the allegations. She interviewed sixteen students, among other things. *See* Office of Special Investigations Memorandum and Notification, ECF No. 87-16 ("OSI Memo"). Diaz substantiated the allegations against Plaintiff, finding "an enormous amount of consistency" in their accounts. 3020-a Opinion and Award at 29-30. SCI recommended that the Office of Legal Services

6

determine the appropriate disciplinary action to be taken against Plaintiff. OSI Memo at 9. As a result, Plaintiff was charged with unprofessional conduct. June 2008 Disciplinary Meeting Documents at 4, ECF No. 87-18.

Pursuant to New York State Education Law § 3020-a, a hearing was conducted before Hearing Officer Mary L. Crangle in February and March 2009. 3020-a Opinion and Award. Upon review of the evidence, Crangle rejected the disciplinary recommendation. She determined that the DOE failed to meet its burden of proof, basing this conclusion in part on the students' motives to fabricate the allegations at issue. *Id.* at 30. Crangle found that the complaining students all disliked Plaintiff and / or gym class and that all except for three were failing Plaintiff's class. *Id.* at 35-36. Crangle also identified what she termed flaws in the investigation: namely, the failure to separate students when eliciting their statements, and a selection bias in the choice of which students were interviewed. Crangle also criticized the "summary fashion" of the analysis. *Id.* at 41-43. She ultimately dismissed the charges against Plaintiff in their entirety. *Id.* at 44.

C. **Plaintiff's Return**

In 2009, Plaintiff returned to active service at BHSA. Plaintiff testified that upon her return, she was told the school did not have a teaching assignment for her. Pl. Dep. at

88:2-7.  In her declaration, former BHSA Principal Margaret
Lacey-Berman (who succeeded Principal Finley) explained that the
school had been "fully programmed" in the subjects Plaintiff was
licensed to teach.  *See* Margaret Lacey-Berman Declaration ¶¶ 1,
3, ECF No. 87-20 ("Lacey-Berman Decl.").  Instead, Plaintiff was
asked to answer the phone and cover classes when teachers were
absent.  *Id.* ¶ 4.

Shortly thereafter, Lacey-Berman asked Plaintiff if
she would like to teach yoga classes.  *See id.*; Pl. Dep. at
88:12-14.  Plaintiff rejected this offer.  She produced a
doctor's note stating that she had certain physical restrictions
related to her hip replacement, and could have no proximity to
gym students due to the possibility of falling.  Pl. Dep. at
88:17-20; *see also* Lacey-Berman Medical Examination Request, ECF
No. 87-21.

Plaintiff testified that she asked to be programmed to
teach health class as an accommodation for her hip condition,
but that Lacey-Berman denied this request and continued to
engage another health teacher.  Pl. Dep. at 93:14-24.  Lacey-
Berman disputed that Plaintiff asked her to teach health
classes.  Lacey-Berman Decl. ¶ 6.  There is no dispute, however,
that Plaintiff thereafter submitted a special accommodation
request to the medical division of the DOE's human resources
department.  *See* Accommodation Request, ECF No. 106-10; Def.

56.1 ¶ 83.  This request was denied; Lacey-Berman attested that there were no available health classes for Plaintiff to teach. Lacey-Berman Decl. ¶ 6.  As discussed below, Plaintiff does not dispute this.

In January 2010, Plaintiff was declared fit for duty, having recovered from her hip injury, and she returned to work. *See* Return to Activities Restriction Form at 4, ECF No. 87-22; *see also* Pl. Dep. at 92:9-15; 93:8-11.  She left BHSA in 2012. Def. 56.1 ¶ 105.

## II.  Procedural History

Plaintiff filed the instant action on February 3, 2010.[4]  ECF No. 1.  Her complaint alleges that Defendants discriminated against her on the basis of her age and disability in violation of various federal and state laws.

By Memorandum and Order, Judge Townes granted, in part, Defendants' motion to dismiss.  *See Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334 (E.D.N.Y. 2013).  Judge Townes ultimately dismissed all of Plaintiff's claims except for her age discrimination and hostile work environment claims brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and her disability

---

[4] This case was with Judge Sandra L. Townes until 2018, at which time it was transferred to Judge Carol Bagley Amon.  The case was transferred to the undersigned in 2020.  The parties did not fully brief the motion for summary judgment until December 2020.

discrimination claims under the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12111-12213.[5]  The remaining defendants are

the DOE and Paradis, Finley, Chancellor Klein, and Lacey-Berman,

all in their official capacities.[6]  On February 9, 2020, this

case was transferred to the undersigned.  Discovery closed

shortly thereafter.  Defendants now move for summary judgment.

### III. Legal Standard

Summary judgment is appropriate if the record

demonstrates that "there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a

matter of law."  Fed R. Civ. P. 56.  "A fact is 'material' for

these purposes if it 'might affect the outcome of the suit under

the governing law.' . . .  An issue of fact is 'genuine' if 'the

---

[5] In two orders dated March 29, 2013 and August 2, 2017, Judge Townes dismissed certain of Plaintiff's ADEA and ADA claims as time-barred.  *See Thomas*, 938 F. Supp. 2d 334; *Thomas v. New York City Dep't of Educ.*, No. 10-CV-464, 2017 WL 11502666 (E.D.N.Y. Aug. 2, 2017).  These claims included "Plaintiff's allegations of age discrimination based on not being appointed a guidance counselor from 2003 through 2005," and her second claim for relief under the ADA "to the extent any claim accrued before June 12, 2007." *Thomas*, 2017 WL 11502666, at *4.

[6] Plaintiff also asserted a retaliation claim against Margaret Lacey-Berman, as well as a race discrimination claim in her opposition to Defendants' motion for summary judgment.  *See* Pl. Opp. at 6, 11.  Parties may not, however, bring new claims for the first time at this stage without leave of court.  *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach merits of argument raised for first time in opposition to summary judgment); *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." (quoting 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1183, at 23 n.9 (3d ed. 2004))); *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir. 1956) (district court was "justified" in "brush[ing] aside" further argument not alleged in complaint but raised for first time in opposition to summary judgment).  Accordingly, these claims are dismissed.

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of showing that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotations omitted) (emphasis omitted).

Though she was represented by counsel when she filed the complaint, Plaintiff is now proceeding *pro se*. When considering a dispositive motion made by or against a *pro se* litigant, courts generally afford the litigant "special solicitude." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002).

## IV.  Discussion

### A.  Age Discrimination Claims

Plaintiff alleges a scheme at BHSA to "remove [her] through their collusive actions to get [her] to retire, resign, . . . or be fired just so that [she] would be removed from the payroll."  Pl. Dep. at 51:18-22.  The scheme allegedly involved three primary actors — Finley, Paradis, and Chancellor Klein. Plaintiff believes that Finley offered a *quid pro quo* to BHSA students in which they were to level false complaints against her in exchange for passing grades.  Def. 56.1 ¶¶ 68-69. Plaintiff also claims that Finley acted at the behest of the DOE and Chancellor Klein, who fostered an environment in which older teachers were discharged when they became too expensive.  *Id.* ¶ 64.  Paradis, she contends, was a means to achieve this end in her case.  *See id.* ¶ 15.

### 1.  Age Discrimination

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  ADEA claims are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  At the first step of this framework, the plaintiff must

establish a prima facie case that (1) she was a member of a protected class (here, that she was at least forty years old); (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of that adverse employment action give rise to an inference of discrimination. *Burger v. New York Inst. of Tech.*, 94 F.3d 830, 833 (2d Cir. 1996).

The first two prongs are not contested. The only issues before this Court are whether the Defendants took adverse employment action against Plaintiff and, if so, whether that action occurred under circumstances giving rise to an inference of discrimination.

a. Adverse Employment Action

An adverse employment action is a "materially adverse change in the terms and conditions of an individual's employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation omitted). To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Adverse employment actions include termination, demotion, a material loss of benefits and

significantly diminished responsibilities, among other things. *Id.*

The Supreme Court has held that reassignment can constitute adverse employment action if it comes with "significantly different responsibilities." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). It is undisputed that Plaintiff did not teach any classes while assigned to the TRC, and instead was required to sit in the "Rubber Room" and pass the day. This is a significant change in responsibilities. *E.g.*, *Batyreva v. New York City Dep't of Educ.*, No. 07-CV-4544, 2010 WL 3860401, at *12 (S.D.N.Y. Oct. 1, 2010), *aff'd*, 464 F. App'x 31 (2d Cir. 2012) (reassignment to a TRC is "plainly an adverse employment action"). Accordingly, Plaintiff has satisfied this element for summary-judgment purposes.

  b.  Inference of Discrimination

Plaintiff has not shown, however, that her assignment to the TRC occurred under circumstances giving rise to an inference of discrimination. She contends that this assignment was a product of Defendants' ageism, but her contention rests on a series of conclusory statements for which she produces virtually no evidentiary support. Plaintiff testified that Finley concocted the allegation that she made inappropriate comments as part of a "concerted effort" to move her "off the

payroll," and that he manipulated students into filing false claims to accomplish this goal.  Pl. Dep. at 19:17; 71:8-15.  At her deposition, when asked whether Finley manufactured the allegations of inappropriate comments attributed to Plaintiff, Plaintiff responded simply: "Yes.  He lied."  *Id.* at 59:21-23. When pressed, she responded: "I feel that the students were coerced to make these statements against me, which is why I feel Mr. Finley lied."  *Id.* at 71:10-12.  But she adduced no probative evidence to support her allegation that Finley orchestrated the students' complaints.

Plaintiff's "feelings and perceptions" are not, needless to say, evidence sufficient to overcome a motion for summary judgment.  *See, e.g.*, *Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999) (noting that plaintiff's subjective feelings were a "tissue-thin" and "unpersuasive" basis for a discrimination claim and affirming the district court's grant of summary judgment); *see also Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 133 (E.D.N.Y. 2012) (plaintiff's personal opinion about the reasons for defendant's action is insufficient, without corroboration, to demonstrate an inference of discrimination).

The closest Plaintiff comes to adducing specific evidence is her testimony that Finley introduced "doctored" student transcripts at her disciplinary hearing, purportedly to show that the students were passing Plaintiff's class, when in

15

fact (according to Plaintiff) she had failed all four students. Pl. Dep. at 72:24–73:2; 74:2–6. The obvious inference, she argues, is that Finley altered their grades as a *quid pro quo* for their statements. *Id.* at 72:13–73:2; 74:25–75:4. But this claim is not borne out by any aspect of the administrative hearing, the hearing officer's decision, or any other record evidence. Finley's disciplinary hearing testimony does not even reference student grades or transcripts. *See generally* Finley Hearing Tr. Nor did OSI find any fault with Finley's conduct in reporting the allegations that led to the investigation. Again, Plaintiff's theory is supported only by her own surmise. *See BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (holding that "[c]onclusory allegations or denials" without supporting facts are "insufficient to raise a triable issue of material fact").

Even assuming, for the sake of argument, that Finley was trying to drive her out of the school, Plaintiff has not adduced sufficient evidence that Finley was motivated by ageism rather than some other animus. *See Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 14-CV-5125, 2018 WL 1603872, at *8 (E.D.N.Y. Mar. 30, 2018), *aff'd*, 767 F. App'x 123 (2d Cir. 2019) (plaintiff must show that employer's motive is to discriminate based on a protected characteristic, and not just a product of personal disdain); *Doe v. Torrington Bd. of Educ.*,

16

179 F. Supp. 3d 179, 196 (D. Conn. 2016), *on reconsideration in part*, No. 15-CV-00452, 2016 WL 6821061 (D. Conn. Nov. 17, 2016) (noting that a person in a protected category subject to harassment does not automatically establish that the harassment occurred *because* of that category).  Plaintiff attributes certain age-related comments to Paradis, but she has not produced any evidence from which a jury could conclude that Paradis's comments were made pursuant to a conspiracy with Finley, or that they are otherwise reflective of Finley's mental state.  *Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) ("We have long held that stray comments of this variety do not create an inference of discrimination."); *Vucinaj v. New York City Police Dep't*, No. 18-CV-7606, 2020 WL 4677597, at *8 (S.D.N.Y. Aug. 12, 2020) (plaintiff must show connection between alleged comments and adverse employment action); *Bailey v. Frederick Goldman, Inc.*, No. 02-CV-2429, 2006 WL 738435, at *4 (S.D.N.Y. Mar. 23, 2006) ("[S]tray comments . . . without some demonstrable connection [to the adverse employment action] are insufficient to give rise to an inference of discrimination.").

     At the same time, the Defendants have adduced evidence demonstrating that Finley acted appropriately in calling for an independent investigation and that he followed proper procedures.  BHSA Dean Bennett testified that he presented

Finley with serious allegations of inappropriate conduct by Plaintiff. Bennett Hearing Tr. 408:13-409:12. Plaintiff does not dispute that Finley received a report of Plaintiff's inappropriate comments from Bennett, or contend that Bennett was a participant in any collusive effort. Taking Bennett's report as a given, it is impossible to conceive that Finley would not follow up. And after Finley reported the alleged conduct to the SCI, the SCI reported that it had substantiated the allegations. *See* Def. 56.1 ¶¶ 41-42, 46. Finley testified that this was according to established procedure. Finley Hearing Tr. at 316:16-317:8. Even recognizing the hearing officer's later criticism of SCI's investigation, there is simply insufficient evidence that Finley acted out of a discriminatory motive.

Plaintiff also attempts to marshal Chancellor Klein's alleged comments that he wanted "new blood" and to "clean the house of the old ways." Compl. ¶ 171. She alleges that Finley's actions were a direct result of Klein's comments, as Klein was sending "signals to purge the system of veteran tenured teachers at the top of the pay scale." *Id.* And she testified that "it was a known fact . . . that principals were going after teachers to get those more senior off the payroll." *Id.* at 23:20-22.

The first and foremost problem with Plaintiff's reliance on the "new blood" and "old ways" comments is that she

18

has produced no evidence that Klein even made them.  Plaintiff
admitted that she has never met Klein.  *Id.* at 55:6-7.  She
testified that she is "sure" the comments came from "something .
. . valid" because they were put into the complaint by her
attorney.  *See id.* at 86:3-87:5.  This is plainly insufficient.
"[C]onclusory statements, conjecture, [and] speculation" are
insufficient to defeat a motion for summary judgment, *Kulak v.
City of New York*, 88 F.3d 63, 71 (2d Cir. 1996), and Plaintiff's
hypothesis about Klein's effect on her employment status is
nothing if not speculative.  Moreover, even if Plaintiff could
show that the treatment she alleges was motivated by Chancellor
Klein's desire to remove *higher salaried* teachers from the
payroll and not personal animus, that does not necessarily make
her ADEA claim actionable.  *See Hazen Paper Co. v. Biggins*, 507
U.S. 604, 611 (1993) (even though employee seniority may be
"empirically correlated" with age, it is "analytically
distinct"; thus, adverse action based solely on financial
considerations related to seniority is not actionable under the
ADEA); *see also James v. New York Racing Ass'n*, 233 F.3d 149,
153 (2d Cir. 2000) ("Such concern with the elevated costs of
senior employees does not constitute age discrimination."
(citing *Hazen Paper Co.,* 507 U.S. at 611)).

Ultimately, the only evidence that a *quid pro quo*
existed is Plaintiff's own vague, unsubstantiated, and self-

serving testimony.  But "unsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment."  *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015).  On this record, no reasonable juror could infer an age-related discriminatory motive for the reassignment and associated hearing.  Defendants are entitled to summary judgment on this claim.

    2.   <u>Hostile Work Environment</u>

    Plaintiff argues that she was subject to a hostile work environment because of her age.  She cites three bases for this claim:  Paradis's actions in 2006; her assignment to the TRC in November 2007; and Chancellor Klein's comments.  These bases do not suffice, either individually or in the aggregate.

    A hostile work environment exists when harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quotations omitted).  This requirement has objective and subjective components: the misconduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must subjectively perceive that environment to be abusive.  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotation omitted).  As a general rule, incidents must be more than "episodic; they must be sufficiently

continuous and concerted in order to be deemed pervasive."
*Perry*, 115 F.3d at 149 (quotation omitted).  In order to
establish an age-based hostile work environment claim, a
plaintiff must, of course, demonstrate that the hostile conduct
occurred because of her age.  *Dawson v. City of New York*, No.
09-CV-5348, 2013 WL 4504620, at *13-14 (S.D.N.Y. Aug. 19, 2013).

Plaintiff has produced insufficient evidence for a
reasonable jury to conclude that Paradis's actions were severe
and pervasive enough to alter the conditions of her employment.
These comments, while perhaps offensive, were no more than
episodic.  While "a single act can meet the threshold if, by
itself, it works a transformation of the plaintiff's workplace,"
*id.* at *13, Paradis's isolated comments were far from
transformative.  *See, e.g.*, *Pimenta v. Assa Abloy Sales & Mktg.
Grp., Inc.*, No. 4-CV-858, 2006 WL 3098762, at *7 (D. Conn. Oct.
31, 2006) (holding that sporadic comments, even if ageist in
nature, are insufficient to establish a hostile work environment
and noting that "the ADEA's severe or pervasive requirement" is
"designed to filter out" such claims).

Plaintiff's allegations concerning Finley's part in
the scheme are similarly unavailing.  There is no allegation
that Finley ever made any age-related comments towards
Plaintiff.  While the reassignment was a material change to
Plaintiff's employment, she has produced insufficient evidence

that it was motivated by discriminatory animus (as discussed above).  Without such evidence, the investigation and reassignment cannot form the basis of a hostile work environment claim.  Nor do Klein's alleged comments suffice, given the absence of any evidence that he actually made them.

Therefore, even considering the incidents collectively and in the light most favorable to Plaintiff, no reasonable juror could find that Plaintiff was subjected to a hostile work environment.  Defendants are entitled to summary judgment on this claim.

## B.    Claims under the ADA

The ADA prohibits employers from discriminating on the basis of a disability in the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie case of disability discrimination, a disabled plaintiff must demonstrate, among other things, that she was otherwise qualified to perform the essential functions of her job (with or without a "reasonable accommodation") and that she suffered an adverse employment action because of her disability.  *Rios v. Department of Education*, 351 F. App'x 503, 505 (2d Cir. 2009) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).  Here, Plaintiff's claim falls short because she has not demonstrated that she was qualified to perform her job as a gym teacher — on the contrary, she admits she was not — and the

requested transfer to a non-existent health teacher position was not a "reasonable accommodation."

The ADA "does not require creating a new position for a disabled employee," *Graves v. Finch Pruyn & Co., Inc*, 457 F.3d 181, 187 (2d Cir. 2006), and "an employer need not reassign an employee if no position is vacant." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999); *see also Mitchell v. Washingtonville Cent. Sch. Dist.*, 992 F. Supp. 395, 410 (S.D.N.Y. 1998), *aff'd*, 190 F.3d 1 (2d Cir. 1999) (under the ADA, employers are "required neither to create a new position for the employee nor to move another employee from a previously held position in order to accommodate the disabled employee"). And the employee seeking to recover for a failure to reasonably accommodate bears the burden of showing the existence of a vacancy at the time the employee sought a transfer. *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). Here, Lacey-Berman declared that there were no such vacant positions for which Plaintiff was qualified — that is, that there were no vacant health education positions. *See* Lacey-Berman Decl. ¶ 6 ("I could not have provided an accommodation as there were no available classes for Dr. Thomas to teach and we had no additional students in order to create an additional class."). Plaintiff has not rebutted this evidence: she did not testify, and cites no evidence at all, to the effect that there

was an open position for a health teacher at BHSA.  Indeed,
Plaintiff acknowledges that another teacher was teaching health
at BHSA at the time.  *See* Def. Rule 56.1. ¶ 81*; see also Wenc v.
New London Bd. of Educ.*, 702 F. App'x 27, 31 (2d Cir. 2017)
(disabled teacher's request for transfer to sixth-grade
classroom from first-grade "was not an option, as there were no
open sixth-grade positions" when teacher returned to work).

        For these reasons, Plaintiff raises no genuine issue
of material fact regarding the denial of her request for a
reasonable accommodation.  Summary judgment is appropriate on
this ground as well.[7]

## V.    Conclusion

        For the foregoing reasons, Defendants' motion for
summary judgment is granted in its entirety.  The Clerk of Court

---

[7] Plaintiff appears also to allege that she was "constructively
discharged" due to the Defendants' refusal to accommodate her disability.
*See* Compl. ¶ 211 (alleging that Defendants "attempt[ed] to force plaintiff to
retire earlier than she would otherwise wish to").  But she has adduced no
evidence that she was disabled at the time of her separation from the DOE —
more than two years after her last medical fitness determination.  Instead,
she testified that she was found "fit for duty" in 2010, and she did not
leave BHSA until July 2012.  *See* Return to Activities Restriction Form at 4;
*see also* Pl. Dep. at 21:9-18; 92:9-15; 93:8-11.  Nor does Plaintiff point to
any facts tending to show that the 2009 medical fitness determination (in
which she was found unfit) was a motivating factor in her separation in 2012.
*See, e.g.*, *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir.
2014) (constructive discharge claim requires a showing that the discharge was
driven by the alleged disability).  In any event, the constructive
termination is alleged to have transpired *after* Plaintiff filed her
complaint.  Thus, she may not now assert this theory.  *See, e.g.*, *Jackson v.
Onondaga Cty.*, 549 F. Supp. 2d 204, 219-20 (N.D.N.Y.) (plaintiff may not rely
on a new claim – the facts of which postdate his complaint – to defeat a
summary judgment motion).  Accordingly, this claim, too, is dismissed.

is respectfully directed to enter judgment in favor of
Defendants and close this case.

SO ORDERED.


_____
/s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:     June 28, 2021
           Brooklyn, New York